IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

KOFI OHENE AGYEKUM            )
                             )
            Movant,          )
                             )
v.                           )            CIVIL ACTION NO. 3:18-00543
                             )            (Criminal No. 3:14-00197)
UNITED STATES OF AMERICA,     )
                             )
            Respondent.       )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside

or Correct Sentence by a Person in Federal Custody.[1] (Document Nos. 186 and 186-1.) By

Standing Order, this matter was referred to the undersigned United States Magistrate Judge for

submission of proposed findings of fact and a recommendation for disposition pursuant to 28

U.S.C. § 636(b)(1)(B). (Document No. 187.)

**FACTUAL AND PROCEDURAL BACKGROUND**

1.    **Criminal Action No. 3:14-00197:**

On May 4, 2015, Movant pled guilty to two counts of Structuring Transactions to Evade

Reporting Requirements in violation of 31 U.S.C. § 5324(a)(3) (Counts 44 and 45). (Criminal

Action No. 3:14-00197, Document Nos. 117, 120, 121.) A Presentence Investigation Report was

prepared. (Id., Document No. 283.) The District Court determined that Movant had a Base Offense

Level of 20, and a Total Offense Level of 25, the Court having applied the following: (1) A two-

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less
stringent standard than if they were prepared by a lawyer, and therefore they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

level enhancement pursuant to U.S.S.G. § 2S1.3(b)(1)(A) because Movant knew or believed the funds were proceeds of unlawful activity; (2) A two-level enhancement pursuant to U.S.S.G. § 2S1.3(b)(2) because Movant committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period; (3) A two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) because Movant was a leader or organizer of the criminal activity; (4) A two-level enhancement pursuant to U.S.S.G. § 3B1.3 because Movant abused a position of public or private trust; and (5) a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). (Id., Document No. 143 and 146.) The District Court sentenced Movant on August 3, 2015, to serve a 64-month term of imprisonment as to each count to run concurrently, to be followed by a three-year term of supervised release. (Id., Document Nos. 141, 142, 144.) The District Court also imposed a $200 special assessment. (Id.) On August 4, 2015, the Court entered a Final Forfeiture Order ordering the forfeiture to the United States of the sum of $2,361,845.17 in United States currency, a 2011 Lexus station wagon, and real property having a street address of 3 Castle Gate, Ona, Cabell County, West Virginia. (Id., Document No. 139.) The District Court dismissed the preliminary order's forfeiture of Movant's residence inasmuch as the residence had been "sold by the lien holder at a public auction." (Id.)

On August 11, 2015, Movant, by counsel, filed a Notice of Appeal. (Id., Document No. 147.) In his appeal, Movant argued as follows: (1) The District Court erred in calculating his sentencing range when it imposed the two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for his leadership role and the two-level enhancement pursuant to U.S.S.G. § 3B1.3 for abusing his position of trust; and (2) "The District Court plainly erred by failing to ensure that [his] waiver of rights related to forfeiture was made knowingly and intelligently by not inquiring as to whether

[Movant] was aware of the myriad of procedural rights and protections which he was waiving." (Id., Document No. 159.) On January 24, 2017, the Fourth Circuit Court of Appeals affirmed Movant's convictions and sentences. United States v. Agyekum, 846 F.3d 744 (4th Cir. 2017). Movant filed a petition for certiorari in the United States Supreme Court, which was denied on May 22, 2017. Agyekum v. United States, ___ U.S. ___, 137 S.Ct. 2177, 198 L.Ed.2d 245 (2017).

On September 25, 2017, Movant, acting *pro se*, filed his Motion for Return of Seized Property. (Criminal Action No. 3:14-00197, Document No. 165.) The United States filed its Response on October 16, 2017. (Id., Document No. 167.) By Order entered on October 27, 2017, the District Court granted Movant's Motion for Return of Seized Property "insofar as the Government agrees to make returnable property available to be picked up by Movant's Representative." (Id., Document No. 170.) On November 9, 2017, Movant filed his Reply arguing he was entitled to the return of additional seized property. (Id., Document No. 172.) On November 21, 2017, the United States filed its Supplemental Response. (Id., Document No. 174.) By Order entered on December 5, 2017, the District Court denied Movant's request for the return of additional property finding that "the Government has met its duty to return property to which Defendant is entitled and to explain why Defendant is not entitled to the return of the remaining property." (Id., Document No. 175.) On December 18, 2017, Movant filed his second Motion for Return of Seized Property. (Id., Document No. 176.) By Order entered on December 20, 2017, the District Court denied Movant's Motion. (Id., Document No. 177.)

**B.    Section 2255 Motion:**

On April 9, 2018, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[2] (Civil No. 3:18-00543, Document Nos. 186 and 186-1.) As grounds for *habeas* relief, Movant alleges ineffective assistance of counsel and prosecutorial misconduct. (Id.) As to his ineffective assistance of counsel claim, Movant alleges that Attorneys Daniel L. Holstein and Mark S. Plants were ineffective based upon the following: (1) Counsel allowed Movant to enter into an unknowingly and unintelligent plea agreement; (2) Counsel failed to challenge the unreasonable forfeiture provision as contained in the plea agreement; (3) Counsel failed to file a motion requesting that Movant be released on bond pending trial; (4) Counsel withheld Brady material from Movant; (5) Counsel failed to sufficiently present facts and arguments in opposition to the enhancement of Movant's offense level based upon the abuse of a position of trust; (6) Counsel failed to disclose of Movant that Attorney Plants had "legal and disciplinary issues;" (7) Counsel allowed a communication language barrier to exist with Movant due to Movant's "thick accent;" (8) Counsel refused to accept Movant's "version of the case;" (9) Counsel failed to obtain expert witnesses; (10) Counsel gave Movant an erroneous sentencing estimate; and (11) Counsel failed to challenge the "dollar amount the Government claimed it could prove as being the sale of oxycodone." (Id.) As relief, Movant requests his immediate release from custody and that the Court "revisit" its decision as to the forfeiture of his assets. (Id.)

## DISCUSSION

---

[2]    According to the BOP's Inmate Locator, Movant was released from custody on April 5, 2019. Upon his release from custody, Movant began serving his three-year term of supervised release. "A prisoner on supervised release is considered to be 'in custody' for purposes of a § 2255 motion." *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999). The Movant's Motion continues to be viable therefore while he is on supervised release. *Smith v. United States*, 2009 WL 2213480, *1 (S.D.W.Va.)(J. Goodwin).

The relevant portion of Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

1.    **Ineffective Assistance of Counsel:**

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was

5

in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald

6

v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

**A.     Counsels' alleged ineffectiveness regarding involuntary and unknowing plea:**

In his Motion, Movant first alleges that his plea was involuntary and made unintelligently and unknowingly due to ineffective assistance of counsel by Attorneys Daniel L. Holstein and Mark S. Plants. (Civil Action 3:18-00543, Document Nos. 186, pp. 4 – 5.) First, Movant contends that Attorneys Holstein and Plants acted ineffectively by improperly pressuring him into entering a guilty plea. (Id., p. 4.) Movant states that counsel "exerted an extraordinary effort to elicit an admission of guilt" and "pushed [Movant] to accept the Government's agreement despite [Movant's] objection and disagreement." (Id.) Next, Movant alleges that his plea of guilty was unintelligent and unknowing as a result of ineffective assistance of counsel. (Id., p. 5.) Movant contends that he stated on the record "that the plea was not explained to him by counsel, and neither did he have the chance to read the plea." (Id.) Movant complains that the plea agreement was "rushed to him at the holding cell of the U.S. Marshals with intense pressure on [Movant]." (Id.) Movant complains that "counsel strongly and openly advocated for [Movant] to sign a plea because there was a deadline on the same date." (Id.) Movant states that he "never understood . . . the entirety of the plea, [but] counsel kept saying it is a great deal and 'I will explain to you later all the details.'" (Id.)

A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). The United States Supreme Court held in Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546 - 47, 81 L.Ed.2d 437 (1984), "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel,

may not be collaterally attacked." Once a criminal defendant has pled guilty, collateral review is limited to an examination of "whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L.Ed.2d 927 (1989); see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1294 - 95 (4th Cir. 1992). A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution. See for example Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)(A defendant challenging the voluntariness of a guilty plea may assert a claim under Brady that the prosecution withheld evidence favorable to the defendant and material to guilt or punishment when defendant requested it.).

The Rule 11 colloquy is designed to ensure that a guilty plea is both intelligent and voluntary. See United States v. Vonn, 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). "Prior to accepting a guilty plea, a trial court, through colloquy with the defendant, must inform the defendant of, and determine that he understands, the nature of the charge(s) to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty and various rights." United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea." See Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973); Manley v. United States, 588 F.2d 79, 81 (4th Cir. 1978). A defendant's statement that his plea is voluntary and knowingly is generally considered conclusive on the issue. Savino v. Murrary, 82 F.3d 593, 603 (4th Cir. 1996); also see Fields v. Attorney General of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992)("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."), cert. denied, 506 U.S. 885, 113 S.Ct. 243, 121 L.Ed.2d. 176 (1992); DeFusco, 949 F.2d at 119 (A defendant's statements at

8

the plea hearing are strong evidence of the voluntariness of the plea agreement), cert. denied, 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d. 412 (1992). The Fourth Circuit has recognized that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated - 'permit[ting] quick disposition of baseless collateral attacks." United States v. LeMaster, 403 F.3d 216, 220 (4th Cir. 2005).

The undersigned finds that Movant's above argument that his guilty plea was involuntary and made unintelligently and unknowingly is without merit. A review of the record reveals that Movant's guilty plea was counseled, voluntary, and made with full knowledge of its consequences. The written plea agreement provided that "Mr. Agyekum will plead guilty to Counts Forty-Four and Forty-Five of said superseding indictment, which charges him with violations of 31 U.S.C. § 5324(a)(3) and (d)(2). (Criminal No. 3:14-00197, Document No. 121, p. 2.) The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea. (Id., p. 2.) Specifically, the plea agreement stated that Movant faced a term of "imprisonment for a period of not less than 5 years nor more than 40 years." (Id.) Paragraph 5 of the plea agreement further set forth Movant's and the United States' agreement as to the forfeiture of assets. (Id., pp. 4 – 6.) Finally, the plea agreement stated at Paragraph 13 that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to the specific sentence." (Id., p. 6.)

During Movant's August 27, 2015 plea hearing, Movant acknowledged that he had adequate time with counsel and had received sufficient legal advice. (Criminal Action No. 3:14-

9

00197, Document No. 132, pp. 5 - 7.) Counsel advised the District Court as follows: "We've spent many hours at the Western Regional Jail with Mr. Agyekum going over both the evidence as well as his rights at trial, and not only evidence with respect to the criminal matter, but also with respect to the forfeiture, which is a part of the plea agreement." (Id., p. 7.) Following the foregoing representation by counsel, Movant acknowledged that he was "satisfied that [he] had enough time with [his] lawyers and they [had] answered [his] questions." (Id.) Movant affirmed that he was "completely satisfied with the legal advice [counsel] had given [him]." (Id., p. 6.) The record reveals that the Court concluded the April 27, 2015 plea hearing when Movant indicated that he did not agree to the forfeiture provisions as set forth the in the plea agreement. (Id., pp. 10 - 14.) The Court advised all parties that if Movant decided to proceed with the plea agreement, the Court would hold another plea hearing the following week or otherwise trial would occur in two weeks. (Id., p. 14.) On May 4, 2015, the District Court resumed Movant's plea hearing after being advised that Movant wished to proceed with his plea of guilty. (Id., Document No. 133, pp. 3 – 4.) Movant again advised the Court he had adequate time with counsel and he wished to proceed with his guilty plea. (Id., p. 4.) Specifically, the follow colloquy occurred between the District Court and Movant:

> Q.    Is that correct, Mr. Agyekum?
>
> A.    Yes, sir.
>
> Q.    Have you had enough time to discuss this matter with your lawyers?
>
> A.    Yes, sir. Yes, sir.
>
> Q.    Have they explained to you your options?
>
> A.    Yes, sir.
>
> Q.    And you've now decided, then, that you want to go through with the plea

agreement and resume offering a guilty plea in this matter; is that correct?

A.       Yes, sir.

(Id.) Movant further acknowledged that he understood the terms of the plea agreement and he

wished to plead guilty. (Id., pp. 6 – 7.) Specifically, the follow colloquy occurred between the

District Court and Movant:

Q.       All right. So, Mr. Agyekum, when we were last here, I had asked you if you understood what the agreement does and what it requires of you. I ask again, do you understand what your plea agreement does and what it would require of you?

A.       Yes, Your Honor.

Q.       And do you understand that part of the plea agreement is a stipulation of facts that you signed that would be used against you for this plea and for sentencing or even at a trial?

A.       Yes, Your Honor.

Q.       And did you go over the plea - - each paragraph of the plea agreement with your lawyers before you signed it?

A.       Yes, Your Honor.

Q.       Do you want me to accept your plea agreement?

A.       Yes, sir.

Q.       And specifically you understand about the forfeiture provisions that are in the plea agreement?

A.       Yes, sir.

Q.       And you now accept those; is that right?

A.       Your Honor, since I have no choice, since I don't have any choice, so - -

Q.       Well, your choice would be to either comply with the plea agreement or refuse to comply with the plea agreement. Do you understand that?

A.       Yes, sir.

11

(Id., pp. 6 – 7.) Movant confirmed he wanted to accept the plea agreement. (Id.) The District Court then discussed in detail with Movant the nature of the charges, the consequences of pleading guilty, and the constitutional and legal rights Movant was giving up by pleading guilty. (Id., pp. 9 – 48.) Finally, the District Court inquired of Movant concerning the voluntariness of his guilty plea. (Id., pp. 48 - 49.) Specifically, the Court inquired of Movant as follows:

Q.    Has anyone forced you or threatened you or talked you into pleading guilty against your will?

A.    Your Honor, as I consistently say - -

Q.    As I what?

A.    As I've said, I mean from the beginning, this is not something that I really wanted to do, but I mean I guess I have to be honest with you. The kind of pressure that the United States Attorneys had, was going to give me more years in prison, without my kids, and without seeing this case for this long, I have to take this plea. And if you see every day, I'm in the newspaper with mis - - a lot of misinformation, informing all this public. All this is scaring me. I'm scared and I feel like I'm helpless and I have no - - I have the best option to go ahead and take the plea.

Q.    All right.

A.    And also they're using my own family against me. Some of this stuff that, I mean, I'm considering, but that's the way that I have to take this plea.

Q.    All right. And you understand that you do not have to take this plea. You could say, "No, I do not want to plead guilty at this time." Do you understand that?

A.    Yes, sir.

Q.    All right. Is - - are you acting voluntarily and of your own free will in making the choice to plead guilty?

A.    Yes, sir.

Q.    Is pleading guilty your own idea at this point?

A.    Yes, sir.

Q.    Has anyone promised you anything or told you something different from what we've talked about here in court today to get you to plead guilty?

A.    No, sir.

Q.    All right. I find your guilty plea is voluntary. And, again, this is the last time I'll ask you, Mr. Agyekum, but it's important. At this point do you have any questions or second thoughts about pleading guilty?

A.    No, Your Honor.

(Id.) Based on the foregoing, the undersigned finds that Movant's guilty plea was voluntary and made with full knowledge of its consequences. Although Movant expressed that he was unhappy with the terms of the plea agreement, there is no indication that Movant's plea of guilty was entered into involuntary, unknowingly, or unintelligently. The District Court advised Movant multiple times that it was Movant's decision to either plead guilty or go to trial, and Movant continuously affirmed he wished to go forward with the plea agreement. Accordingly, the undersigned finds Movant's allegation that his plea was entered in to unknowingly, involuntarily, and unintelligently due to ineffective assistance of counsel is without merit.

**B.    Counsels' alleged ineffectiveness regarding the forfeiture provision:**

Second, Movant alleges that Attorneys Holstein and Plants were ineffective in failing to challenge the "unreasonable forfeiture" as contained in the plea agreement. (Civil Action No. 3:18-00543, Document No. 186, p. 6.) Movant explains that he "consistently rejected and objected to the forfeiture put forward by the government, and asked counsel repeatedly to object to the forfeiture and asked counsel to put [his] counter-offer in writing." (Id.) Movant argues that the forfeiture was excessive and violated his Eighth Amendment rights. (Id.)

The undersigned finds that Attorneys Holstein and Plants were not ineffective by failing to

13

submit a counter-offer to the United States in writing. As stated above, Movant's trial counsel represented to the Court that they had "spent many hours at the Western Regional Jail with Mr. Agyekum going over both the evidence as well as his rights at trial, and not only evidence with respect to the criminal matter, but also with respect to the forfeiture, which is a part of the plea agreement." (Id., p. 7.) Following the foregoing representation by trial counsel, Movant acknowledged that he was "satisfied that [he] had enough time with [his] lawyers and they [had] answered [his] questions." (Id.) Movant affirmed that he was "completely satisfied with the legal advice [counsel] had given [him]." (Id., p. 6.) The record reveals that the Court concluded the April 27, 2015 plea hearing when Movant indicated that he did not agree to the forfeiture provisions as set forth the in the plea agreement. (Id., pp. 10 - 14.) On May 4, 2015, the District Court resumed Movant's plea hearing after being advised that Movant wished to proceed with his plea of guilty. (Id., Document No. 133, pp. 3 – 4.) Movant again advised the Court he had adequate time with counsel and he wished to proceed with his guilty plea. (Id., p. 4.) Although Movant indicated that he was unhappy with the forfeiture provision, Movant acknowledged that he accepted the plea agreement. Even assuming counsel failed to make a counter-offer in writing to the United States concerning the forfeiture provision, there is no indication that Movant was prejudiced by such failure. First, the undersigned notes that counsel secured the dismissal of 53 counts as charged in the Third Superseding Indictment in exchange for Movant's agreement to plead guilty. Furthermore, the United States thoroughly detailed the factual basis supporting the plea agreement including details supporting the forfeiture provision. (Criminal Action 3:14-00197, Document No. 133, pp. 18 – 33.) Thus, the record reveals United States had sufficient evidence to support the forfeiture provision and there is no indication the United States would have agreed to a less amount. Accordingly, the undersigned respectfully recommends that Movant's above claim of

14

ineffective assistance of counsel be denied.

C.    **Counsels' alleged ineffectiveness regarding motion for bond:**

Third, Movant alleges that Attorneys Holstein and Plants were ineffective in failing to file a motion for Movant to be released "on bail to better prepare for trial." (Civil Action No. 3:18-00543, Document No. 186, p. 8.) Movant alleges that counsel failed to file the motion because counsel wanted Movant to plead guilty "due to lack of devotion and time." (Id.) Movant states that counsels' failure to file the motion "indicates [counsel] wasn't acting in the best interest of [Movant]." (Id.)

The undersigned finds that Movant's above claim of ineffective assistance of counsel is without merit. First, the undersigned finds that trial counsel did not act unreasonably in failing to file a motion for release on bond. The record clearly reveals that Movant's prior counsel (Attorneys David Schles and Glen Conway) requested Movant's release on bond on two separate occasions. During Movant's Detention Hearing, Attorney Schels unsuccessfully argued for Movant's release on bond. (Criminal Action 3:14-00197, Document Nos. 12 and 14.) Subsequently, Attorney Glen Conway filed a Motion to Reconsider the Detention on September 19, 2014. (Id., Document No. 27.) The Court conducted a bond hearing on October 1, 2014 and denied Movant's Motion. (Id., Document Nos. 30, 31, and 32.) Thus, the undersigned cannot find that Attorneys Holstein and Plants acted unreasonably in failing to file a repeated motion for bond. Furthermore, the undersigned finds that Movant fails to indicate how he was prejudiced by Attorneys Holstein and Plants' failure to file a motion for bond. Movant fails to indicate any change of circumstance or additional evidence that could have supported his release on bond that was not available at the prior detention hearings. Thus, Movant merely speculates that an additional motion for bond would have been successful. Movant, however, contends that his release on bond would have allowed

15

him to better prepare for trial. The record, however, reveals that Movant pled guilty instead of proceeding to trial. There is no indication that Movant's release on bond would have resulted in him rejecting the plea offer where the United States agreed to dismiss 53 counts as charged in the Third Superseding Indictment. Accordingly, the undersigned finds that Movant cannot establish either prong of the <u>Strickland</u> standard.

### D.    Counsels' alleged ineffectiveness regarding <u>**Brady**</u> material:

Fourth, Movant alleges that Attorneys Holstein and Plants were ineffective by withholding <u>Brady</u> material from Movant. (Civil Action No. 3:18-00543, Document No. 186-1, p. 2.) Movant alleges that Attorneys Holstein and Plants withheld <u>Brady</u> material, which "impacted [Movant's] ability to make the right choice and prevented [Movant] from going to trial." (<u>Id.</u>) Movant states that after this conviction, Movant petitioned the Court for release of all "legal materials" and counsel did not release all material.[1] (<u>Id.</u>) Specifically, Movant contends counsel withheld [Movant's] bank statements when documents were provided to him.[2] (<u>Id.</u>)

The undersigned finds that Movant's above argument is without merit. Movant's conclusory claim that counsel withheld <u>Brady</u> material is insufficient. Although Movant alleges that counsel withheld <u>Brady</u> material, Movant fails to explain what evidence or material was withheld that he believes constituted <u>Brady</u> material. To state a valid <u>Brady</u> claim, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching,

---

[1] On October 20, 2017, Movant requested a copy of his legal documents. (Criminal Action No. 3:14-00197, Document No. 168.) By Order entered on October 27, 2017, the District Court granted Movant's Motion and directed trial counsel to copy and forward the documents to Movant. (Id., Document No. 170.)

[2] The District Court conducted a hearing on the above issue and trial counsel indicated that all evidence had been reviewed with Movant and there were no bank statements provided by the Government. (Criminal Action No. 3:14-000197, Document No. 158, pp. 7 - 8.)

[the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); Monroe v. Angelone, 323 F.3d 286, 299-300 (4th Cir. 2003). Suppressed evidence is "information which had been known to the prosecution but unknown to the defense." Agurs, 427 U.S. at 103, 96 S.Ct. 2392. "Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal' had it been 'disclosed and used effectively.'" United States v. Wilson, 624 F.3d 640, 661 (4th Cir. 2010(citing Bagley, 473 U.S. at 676, 105 S.Ct. at 3375)). Movant appears to indicate that he perceives Attorneys Holstein and Plants' alleged failure to provide him with copies of Movant's own bank statements to constitute Brady material. Even assuming Attorneys Holstein and Plants withheld copies of Movant's bank statements, such would not constitute Brady material. Clearly, Movant would have access to his own bank statements without resort to requesting such from the United States or his counsel. Furthermore, Movant fails to explain how his bank statements were exculpatory or impeaching. Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

###    E.    Counsels' alleged ineffectiveness regarding sentencing:

Fifth, Movant alleges that Attorneys Holstein and Plants were ineffective by failing to "sufficiently present facts in support of arguments to properly challenging the enhancement for abuse of power and/or trust." (Civil Action No. 3:18-00543, Document No. 186-1, pp. 3 - 4.) Movant contends the foregoing resulted in Movant receiving a "wrong guideline calculation." (Id.) In support, Movant states as follows: "As argued by Circuit Judge Wynn's dissent on September 23, 2016 hearing at the 4th Circuit, Defendant did not have the trust relationship necessary to support the imposition of any abuse of position of trust enhancement with either WV Board of

Pharmacy or the distributor from which A+ Care purchased medications." (Id., p. 3.) Movant then proceeds to set forth the arguments contained in Judge Wynn's dissenting opinion. (Id., pp. 3 – 4.) Movant states that he could not abuse a position of trust because he was a pharmacist intern -- not the pharmacist-in-charge or the supervisor pharmacist. (Id.) Movant then concludes that "[t]he district court . . . erred in imposing the enhancement for abuse of a position of trust." (Id., p. 4.)

In his dissenting opinion, Circuit Judge Wynn concluded that "a trust relationship did not exist between [Movant] and the Board of Pharmacy or between [Movant] and the distributor." Agyekum, 846 F.3d at 755-57. Circuit Judge Wynn explained that, in his opinion, "West Virginia law entrusts pharmacists-in-charge, like Patricia Agyekum – not Pharmacy Interns, like [Movant] – with the responsibility of complying with state and federal laws and preventing the diversion of prescription pharmaceuticals." Id. at 756. Thus, Circuit Judge Wynn concluded that "a trust relationship existed between the Board of Pharmacy and Patricia Agyekum, as the pharmacist-in-charge and [Movant's] supervisor, not between the Board of Pharmacy and [Movant.]" Id. Next, Circuit Judge Wynn determined that there was "no evidence of a trust relationship between [Movant] and the distributor from which A+ Care Pharmacy purchased oxycodone." Id., at 757. Circuit Judge Wynn concluded, in his dissenting opinion, that "Patricia Agyekum may have abused the distributor's trust by allowing [Movant] to use her pharmacist license and DEA Number to order oxycodone [but such] does not support enhancing [Movant's] sentence." Id.

Contrary to Movant's assertion, the record reveals that counsel did argue that Movant could not abuse a position of trust because he was only a pharmacist intern and not a pharmacist-in-charge or supervisor. (Criminal Action No. 3:14-00143, Document No. 146, p. 41, Document No. 135, p. 5, Document No. 155, pp. 110 - 120.) Specifically, counsel objected to the enhancement arguing as follows:

> First, the conviction offense is structuring. There was no position of trust violated with structuring. The money structured was that of his own and his wife. There is no trust relationship involved.
>
> Second, as to any relevant conduct vis-à-vis filling prescriptions, Dr. Agyekum objects to this addition to the base level offense because he is the pharmacist intern. Patricia Agyekum was the pharmacist. She, not he, handled all inventory matters. She, not he, filled prescriptions. She, not her, held the position of trust.

(Id., Document No. 135, p. 6.) Thus, the undersigned cannot find that Attorneys Holstein and Plants acted unreasonably in objecting to the enhancement.

Furthermore, Movant cannot show that he was prejudiced. Movant's challenge to the sentencing enhancement was clearly considered and rejected by the Fourth Circuit. Specifically, the Fourth Circuit found as follows:

> Here, Agyekum was both a professional and a manager who abused the considerable discretion inherent in these positions. Specifically, he was a licensed intern in a pharmacy in West Virginia and, at the same time, functioned as the CEO of A+ Care Pharmacy, with full control of it. Inherent in these positions was the professional and managerial discretion with which he designed and implemented the way the pharmacy functioned vis-à-vis the oxycodone distributor from whom A+ Care Pharmacy purchased oxycodone; the State of West Virginia Board of Pharmacy, to whom A+ Pharmacy had ongoing reporting requirements; employees, including his wife as the licensed pharmacist; the pharmacy's banks; the pharmacy's patients and customers; and the public at large. In some of these relationships, but surely not all, Agyekum's role amounted to a position of trust as used in § 3B1.3 in that it involved "substantial discretionary judgment that is ordinarily given considerable deference" and was "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. § 3B1.3, cmt. n. 1. And in some of these relationships, Agyekum used that discretion to commit or conceal his illegal activities. For instance, rather than purchasing oxycodone from his distributor for dispensation to patients with prescriptions to serve legitimate purposes, as the distributor assumed he was doing, he purchased oxycodone to supply drug dealers illegally and without prescriptions; and rather than reporting filled prescriptions to the West Virginia Board of Pharmacy as required, he altered computer records to avoid proper reporting and to conceal the extent of his illegal activities. In this manner, Agyekum abused his positions as a licensed intern in a pharmacy and as the functioning CEO with complete control of A+ Care Pharmacy by taking advantage of his role in the relationships with his distributor and the West Virginia Board of Pharmacy. See *Caplinger*, 339 F.3d at 237. Moreover, Agyekum's conduct corrupted many of his

19

other professional relationships, including his relationship with his wife in her capacity as an employee and the licensed pharmacist at the pharmacy and his relationship with the pharmacy's legitimate customers, whose purchases he used to shield his illegal conduct. We need not, however, rely on the abuse of these or any other relationships because, at a minimum, Agyekum's clear abuse of his positions of trust with the distributor and the West Virginia Board of Pharmacy justified the district court's application of the two-level enhancement.

Agyekum, 846 F.3d at 753-754. Thus, the Fourth Circuit clearly rejected Movant's above argument. Accordingly, the undersigned finds that Movant cannot establish either prong of the Strickland standard.

Finally, the undersigned finds that Movant's above argument in procedurally barred. In Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.)(per curiam), cert. denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976), the Court held that a defendant "will not be allowed to recast, under the guise of a collateral attack, questions fully considered [on appeal]." The undersigned finds that the foregoing challenge to Movant's sentencing enhancement was raised on appeal and rejected by the Fourth Circuit. Agyekum, 846 Fed.Appx. at 753-54. Movant now attempts to recast, under the guise of collateral attack, a question fully considered and previously rejected by the Fourth Circuit. Therefore, Movant's above claim is procedurally barred because Movant is seeking to revisit the same issue that was addressed on direct appeal without directing the Court to any intervening change in law which authorizes him to do so.

### F. Counsels' alleged ineffectiveness regarding Attorney Plants' "legal and disciplinary issues":

Sixth, Movant alleges that Attorney Plants was ineffective because he was distracted with "legal and disciplinary issues." (Civil Action No. 3:18-00543, Document No. 186-1, pp. 5.) Movant states that Attorney Plants was "battling several issues both legally and disciplinary with W.V. State and W. Va. Bar of Law." (Id.) Movant concludes that Attorney Plants' "legal and

disciplinary issues distracted his sound judgment, attention, and devotions towards [Movant's] case." (Id.) Movant states that the foregoing explains why Attorney Plants "strongly advocated for a guilty plea and pushed for [Movant] to accept the government's agreement due to the fact that counsel did not have the time to prepare for trial and trial never came across in any of counsel's vocabulary." (Id.)

Movant is again attempting to challenge the validity of his plea agreement by alleging Attorney Plants' unrelated "legal and disciplinary issues" resulted in Movant being pressured into pleading guilty. For the same reasons explained in Section 1(A) above, the undersigned again finds that Movant's plea was entered into voluntarily, knowingly, and intelligently. Movant's conclusory claim that Attorney Plants' unrelated "legal and disciplinary issues" resulted in ineffective assistance of counsel is insufficient. Movant fails to establish how he was prejudiced by Attorney Plants' unrelated "legal and disciplinary issues." To the extent Movant alleges that Attorney Plants was unprepared to proceed to trial as a result of his unrelated "legal and disciplinary issues, the record contradicts such. During Movant's initial Plea Hearing conducted on April 27, 2015, trial counsel indicated to the Court that they were prepared to proceed to trial when the Court terminated the hearing to due to Movant's disagreement with the forfeiture provision. When the Court inquired of the parties concerning the rescheduling of the trial date, trial counsel stated they were prepared for trial because "we were planning on going to trial on the 5th."[3] (Criminal Action No. 3:14-000197, Document No. 132, p. 13.) Based upon the foregoing, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

---

[3] Movant's initial Plea Hearing was conducted on April 27, 2015, and counsel indicated they were prepared to go to trial on May 5, 2015. (Criminal Action No. 3:14-00197, Document No. 132.)

**G.     Counsels' alleged ineffectiveness regarding language barrier:**

Seventh, Movant alleges that Attorneys Holstein and Plants were ineffective due to a language barrier. (Civil Action No. 3:18-00543, Document No. 186-1, p. 6.) Movant states that Attorneys Holstein and Plants "claimed and stated [they] could not understand client/defendant when he speaks" because of his thick accent. (Id.) Movant complains that Attorneys Holstein and Plants "emphasized that most West Virginians are not familiar with foreign accents. (Id.) Movant asserts that Attorneys Holstein and Plants strongly encouraged him to plead guilty because they believed a jury "might convict [him] if they couldn't understand [Movant] because of [his] thick accent." (Id.)

Movant is again attempting to challenge the validity of his plea agreement by alleging a language barrier existed between him and his attorneys. For the same reasons explained in Section 1(A) above, the undersigned again finds that Movant's plea was entered into voluntarily, knowingly, and intelligently. Movant's conclusory claim that a language barrier existed because counsel occasionally had difficulty understanding Movant due to his "thick accent" is insufficient. The record is completely void of any indication that Movant and counsel were unable to effectively communicate. Although Movant may have been asked to repeat himself or speak slowly, this does not establish a "language barrier." Merely indicating that that Attorneys Holstein and Plants had difficulty understanding Movant's "thick accent" does not establish ineffective assistance of counsel. Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**H.     Counsels' alleged ineffectiveness regarding accepting Movant's "version of the case:"**

Eighth, Movant alleges that Attorneys Holstein and Plants were ineffective because they

"failed to listen to the [Movant's] version of the case and rather accepted the Government's version as the facts of the case." (Civil Action No. 3:18-00543, Document No. 186-1, p. 7.) Movant states that he suggested that "counsel secure some key evidence from the prosecutor, which could have turned the whole case around in favor of [Movant] but counsel "ignored and neglected all his input." (Id.) Movant further concludes that Attorneys Holstein and Plants failed to file a motion to suppress and challenge the Indictment and search warrant due to their lack of devotion and time. (Id.)

"To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify 'what an adequate investigation would have revealed." Walton v. Ballard, 2018 WL 1582727, * 7 (S.D.W. Va. March 20, 2018)(quoting Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)). Movant merely concludes and speculates that an adequate investigation would have revealed exculpatory or "key evidence." Although Movant contends trial counsel should have filed a motion to suppress and challenged the indictment and search warrant, Movant fails to provide any details with respect to what grounds counsel should have asserted in making the above challenges. Movant merely concludes that counsels' failure to file such motions exhibit their lack of devotion to Movant and preparedness to take the case to trial. Additionally, the record reveals that counsel filed a motion to dismiss and motion to suppress on behalf of Movant. (Criminal Action No. 3:14-00197, Document Nos. 102 and 103.) Finally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S.Ct. at 2065. It is well recognized that classic tactical decisions may be made *without* a defendant's consent. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(emphasis added). Specifically, "[d]ecisions that may be made without the defendant's consent 'primarily involve trial strategy and tactics,' such as 'what

23

evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id.(citing United States v. Teague, 953 F.2d 1525, 1531 (11ᵗʰ Cir. 1992)). Accordingly, the undersigned respectfully recommends that Movant's above claim of ineffective assistance of counsel be denied.

**I.      Counsels' alleged ineffectiveness in failing to obtain an expert:**

Ninth, Movant alleges that Attorneys Holstein and Plants were ineffective because they failed to obtain an expert witness so counsel could "have a better understanding of the pharmaceutical terms and the medical related terms." (Civil Action No. 3:18-00543, Document No. 186-1, p. 8.) Aside from Movant's conclusory assertion, there is no indication that trial counsel needed assistance from an expert to "have a better understanding of pharmaceutical terms and the medical related terms." Given that this claim lacks a factual basis upon which an assessment of its merits can be made, the undersigned recommends the claim be denied.

**J.      Counsels' alleged ineffectiveness based upon erroneous sentencing estimate:**

Tenth, Movant alleges that Attorneys Holstein and Plants were ineffective due to their erroneous sentencing estimate. (Civil Action No. 3:18-00543, Document No. 186-1, p. 8.) Specifically, Movant contends that counsel advised that Movant would not receive any "prison time." (Id.) Movant states that his attorneys advised him that they had clerked for Judge Chambers and "their good relationship with the judge will lead to probation and no prison time." (Id.)

To satisfied Strickland's prejudice prong in the context of ineffective assistance counsel predicated on an erroneous sentence estimate, "the defendant must show that he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58 – 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Fourth Circuit, however, has recognized that "misadvice respecting sentencing possibilities' could not be a 'but for' cause of a guilty plea where

24

the plea is 'based on risk information given . . . by the sentencing court.'" United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995)(quoting United States v. Craig, 985 F.2d 175, 179-80 (4th Cir. 1993). Since the subsequently Rule 11 colloquy serves to correct any misinformation by counsel, a guilty plea predicated on counsel's allegedly inaccurate sentence estimate is insufficient to constitute ineffective assistance of counsel. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)(en banc)(Where "the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant."). The record in this case reflects that Movant's guilty plea was voluntary and made with full knowledge of its consequences. The written plea agreement provided that "Mr. Agyekum will plead guilty to Counts Forty-Four and Forty-Five of said third superseding indictment, which charge him with violations of 31 U.S.C. § 5324(a)(3) and (d)(2)." (Criminal No. 3:14-00197, Document No. 121, p. 2.) The written plea agreement spelled out the maximum sentence to which Movant was subject by virtue of his plea.[3] (Id.) The plea agreement further stated at Paragraph 13 that "[t]he matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to the specific sentence." (Id., p. 9.) At Movant's Plea Hearing, the District Court informed Movant of the maximum sentence to which he was subject and elicited Movant's statement that he knew that his sentence was in the Court's discretion. (Id., pp. 34 – 41.) Specifically, Movant

---

[3] The Plea Agreement set forth Movant's maximum potential penalty as follows: (1) Imprisonment for a period of 20 years; (2) A fine of $1,00,000.00, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater; (3) A term of supervised release of 3 years; (4) A mandatory special assessment of $200.00 pursuant to 18 U.S.C. § 3013; (5) Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663 and 3664. (Criminal Action No. 3:14-00197, Document No. 121, pp. 2 - 3.)

25

acknowledged that he understood "that the sentence [the Judge] may impose could be different from any estimate [his] lawyers may have given [him]." (Id., p. 38.) Finally, the District Court further found that Movant's plea was not the result of any promises or threats. (Id., pp. 49 - 50.) Specifically, the District Court inquired as follows:

> Q.    Has anyone promised you anything or told you something different from what we've talked about here in court today to get you to plead guilty?
>
> A.    No, sir.
>
> Q.    All right. I find you guilty plea is voluntary. And, again, this is the last time I'll ask you, Mr. Agyekum, but it's important. At this point do you have any questions or second thoughts about pleading guilty?
>
> A.    No, Your Honor.

(Id.) As stated above, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221 - 222. Movant has failed to show extraordinary circumstances. Accordingly, the undersigned finds Movant's allegation that Attorneys Holstein and Plants were ineffective due to their erroneous sentence estimate is without merit.

### K.    Counsels' alleged ineffectiveness in failing to challenge monetary value of drugs.

Finally, Movant alleges that Attorneys Holstein and Plants were ineffective due to their failure to challenge the monetary value of the oxycodone. (Civil Action No. 3:18-00543, Document No. 186-1, p. 9.) Movant claims that the "Government could not establish any specific dollar amount as to the sale of oxycodone." (Id.) Movant claims that A+ Care Pharmacy filled valid prescriptions and sold over-the-counter products that generated income. (Id.) Thus, Movant

26

contends that counsel should have "challenged the dollar amount the Government claims it could prove as being from the sale of oxycodone." (Id.)

The undersigned finds that Movant's above claim of ineffective assistance of counsel is without merit. A review of the plea agreement reveals that Movant agreed as part of the forfeiture provision that his distribution of oxycodone generated gross proceeds of at least $2,500,000. (Criminal Action No. 3:14-00197, Document No. 121, p. 4.) Specifically, Paragraph 5(b) provided as follows:

> Mr. Agyekum agrees that the United States could establish, by a preponderance of the evidence, a criminal and/or civil forfeiture proceeding against Mr. Agyekum pursuant to Title 21, United States Code, § 853(a)(1) arising out of his involvement in a conspiracy to distribute quantities of oxycodone, also known as "Roxycodone," a Scheduled II controlled substance, in violation of 21 U.S.C. § 846, which generated gross proceeds of at least $2,500,000.

(Id.) Accordingly, the undersigned finds that Movant cannot establish either prong of the Strickland standard.

## 2. **Prosecutorial Misconduct**:

In his Motion, Movant challenges the validity of conviction arguing that prosecutor "threaten him and harshly urged and influenced [him] to plead guilty and accept the Government's Plea Agreement at the U.S. Marshall's holding cell." (Civil Action No. 3:18-00543, Document No. 186-1, p. 1.) Specifically, Movant complains that the prosecutor informed him if he did not accept the plea agreement she would "do anything in her capacity to give defendant a lengthy prison time behind bar and also add more charges or indictment to the case." (Id.)

In his written plea agreement, Movant agreed to waive his right to appeal his conviction and sentence directly, with two exceptions. (Criminal No. 3:14-00197, Document No. 121, p. 8.) Under the plea agreement, Movant did not waive his right to *appeal* the District Court's

determination of the adjusted offense level under the Guidelines if an objection was properly preserved. (Id.) Movant waived his right to appeal his conviction and sentence of imprisonment, fine, or term of supervised release "so long as the sentence of imprisonment, fine, or term of supervised release [was] below or within the Sentencing Guideline range associated with the adjusted offense level determined by the Court, prior to any consideration of acceptance of responsibility or any departure or variance." (Id.) Movant, however, agreed to waive his right to challenge his guilty plea, conviction and sentence under Section 2255, except on grounds of ineffective assistance of counsel. (Id.) It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily. See United States v. Johnson, 410 F.3d 137 (4th Cir. 2005); United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "To determine whether a waiver is knowing and intelligent, this court examines 'the totality of the circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement.'" United States v. Johnson, 480 Fed.Appx. 229, 230 (4th Cir. 2012)(citation omitted). Generally, the waiver is valid and enforceable if a Court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy. Id.

The undersigned finds that Movant's plea agreement and appellate waiver were voluntary and intelligent. In his Motion, Movant does not argue that his waiver was made unknowingly or unintelligently. (Civil Action. 3:18-00543, Document Nos. 186 and 186-1.) A review of the plea agreement further reveals that the waiver was clear and unambiguous. (Criminal Action No. 3:14-00197, Document No. 121.) Specifically, the plea agreement stated, in pertinent part, as follows:

> The parties reserve the right to appeal the District Court's determination of the adjusted offense level under the United States Sentencing Guidelines, if an objection is properly preserved. Nonetheless, Mr. Agyekum knowingly and

voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine or term of supervised release is below or within the Sentencing Guideline range associated with the adjusted offense level determined by the Court, prior to any consideration of acceptance of responsibility or any departure or variance. The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment, fine or term of supervised release is within or above the Sentencing Guideline range associated with the adjusted offense level determined by the Court, prior to any consideration of acceptance of responsibility or any departure or variance.

Mr. Agyekum also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction(s) resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(Id., p. 8.) The undersigned finds no indication that Movant did not understand the terms and consequences of signing the plea agreement. Considering Movant's educational background, the record reveals that Movant obtained his doctorate degree. (Id., Document No. 146, p. 31 and Document No. 132, p. 4.) During the Plea Hearing, the terms of the plea agreement were thoroughly reviewed with Movant and he acknowledged that he understood the terms and consequences of signing the plea agreement. Further, the District Court thoroughly explained the appellate waiver to Movant during the Rule 11 colloquy and Movant acknowledged that he understood and agreed to the waiver. (Id., Document No. 133, pp. 143-45.) Based on the foregoing, the undersigned finds that Movant's appellate waiver is valid as it was entered into knowingly, intelligently, and voluntarily. Thus, Movant waived his right to challenge the validity of his conviction and sentence. Accordingly, Movant's claim of prosecutorial misconduct is barred by

his valid appellate waiver and should be dismissed. The undersigned further notes any statement made by the prosecutor indicating that Movant would be prosecuted to the full extent of the law if Movant rejected the plea offer, would not constitute prosecutorial misconduct. The undersigned, therefore, respectfully recommends that Movant above *habeas* claims be dismissed.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document Nos. 186 and 186-1) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466,

88 L. Ed. 2d 435 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: November 12, 2020.

Omar J. Aboulhosn
United States Magistrate Judge

31